FILED
United States Court of Appeals
Tenth Circuit

December 16, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TOBY MARTINEZ,

     Defendant-Appellant.
_____

PUBLIC EMPLOYEE RETIREMENT
ASSOCIATION OF NEW MEXICO;
NATIONWIDE RETIREMENT
SOLUTIONS,

     Garnishees.
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

SANDRA MARTINEZ,

     Defendant-Appellant.
_____

PUBLIC EMPLOYEE RETIREMENT
ASSOCIATION OF NEW MEXICO;
NATIONWIDE RETIREMENT
SOLUTIONS,

     Garnishees.

No. 14-2203

No. 14-2209

_____

**Appeals from the United States District Court
for the District of New Mexico
(D.C. No. 1:07-CR-00615-WJ-1
and D.C. No. 1:07-CR-00615-WJ-4)**
_____

Aric G. Elsenheimer, Assistant Federal Public Defender (Brian A. Pori, Assistant Federal Public Defender, with him on the briefs) Federal Public Defender's Office, Albuquerque, New Mexico, for Appellant Toby Martinez in case number 14-2203.

Sandra Martinez, filed a brief pro se in case number 14-2209.

Stephen R. Kotz, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the brief) United States Attorney's Office, Albuquerque, New Mexico, for Appellee United States of America.
_____

Before **BRISCOE**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

At sentencing, the district court ordered Mr. Toby Martinez to pay restitution through monthly installments. Nonetheless, the court later allowed the government to garnish Mr. Martinez's retirement accounts, which exceeded what Mr. Martinez owed in installments at the time. Mr. Martinez and his wife (Ms. Sandra Martinez) contest the garnishments, arguing in part that the government cannot enforce payments that are not yet due under Mr. Martinez's court-ordered payment schedule. We agree with Mr. and Ms. Martinez and conclude that the district court erred by allowing the garnishments to proceed.

2

## I.    The Restitution Order and the Garnishments

Mr. Martinez was convicted of mail fraud and conspiracy, which required the district court to order Mr. Martinez to pay restitution. *See* 18 U.S.C. § 3663A(a), (c) (2012) (requiring restitution for any crime in which a victim "has suffered . . . pecuniary loss"). Complying with this requirement, the district court ordered roughly $2.7 million in restitution. Mr. Martinez was ordered to pay this amount through monthly installments based on a percentage of his disposable income.

But upon leaving prison, Mr. Martinez was unable to obtain steady employment and, as a result, has owed relatively little through the court-ordered payment schedule. Mr. Martinez contends that he has satisfied that schedule, and the government does not argue to the contrary. Nonetheless, the government served writs of garnishment for two of Mr. Martinez's retirement accounts. Together, these accounts were worth roughly $470,000, but Mr. Martinez did not have immediate access to those funds because the accounts had not yet entered distribution status.

In district court, Mr. Martinez moved to quash the writs of garnishment, arguing in part that they would enforce a debt not yet owed. The district court denied the motion to quash, and Mr. and Ms. Martinez appeal. To decide this appeal, we ask: Can the government garnish assets beyond the amount currently due under Mr. Martinez's court-ordered

payment schedule? We conclude that the government cannot do so; as a result, we reverse.[1]

## II. Our review is de novo.

This appeal turns on questions of statutory interpretation. In answering these questions, we conduct de novo review over the district court's statutory interpretation. *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999).

## III. The government can enforce a restitution order only in a manner that does not exceed the payment obligations set out in the restitution order.

Applying de novo review, we must determine whether the government can garnish Mr. Martinez's retirement accounts. To make that determination, we consider 18 U.S.C. §§ 3613 and 3664. These provisions allow the government to "enforce" an "order of restitution" as if it were a lien or civil judgment in favor of the United States. *See* 18 U.S.C. § 3613(a), (c), (f) (2012) ("The United States may enforce an [order of restitution]."); *id.* § 3664(m)(1)(A)(i) ("An order of restitution may be

---

[1] On appeal, Mr. and Ms. Martinez also argue that the garnishments (1) would create an impermissible fine and (2) violate the Employee Retirement Income Security Act, the Internal Revenue Code, and the Consumer Credit Protection Act. Ms. Martinez adds that the district court erred by (1) failing to provide adequate notice of the garnishments, (2) declining to appoint counsel, and (3) denying the motion to quash even though Mr. Martinez could not unilaterally withdraw funds from the accounts without spousal consent. We need not address these arguments in light of our disposition.

4

enforced by the United States . . . ."). Among the government's enforcement tools is the writ of garnishment. *Id.* § 3205(a).

The resulting issue is how to identify the portion of Mr. Martinez's restitution obligation that is currently subject to garnishment.[2] In addressing this issue, we must examine Mr. Martinez's restitution order.

The government argues that it can garnish the entire amount ordered in restitution. In our view, this argument incorrectly assumes that Mr. Martinez currently owes the entire restitution amount.

By statute, it is the district court—not the government—that determines how a defendant is to pay restitution. *See id.* § 3664(f)(2) ("[T]he *court* shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . ." (emphasis added)). Thus, the government can enforce only what the district court has ordered the defendant to pay. *See Enforce*, *Black's Law Dictionary* 645 (10th ed. 2014) (defining "enforce" primarily as "[t]o give force or effect to [a law]; to compel obedience to [a law]").

---

[2] Mr. and Ms. Martinez argue that the garnishments constituted an impermissible modification of the restitution order. In responding to this argument, the government does not contend that it could modify the restitution order. Instead, the government contends that the garnishments were consistent with the restitution order. As a result, we must decide the issue by interpreting the restitution order rather than determining whether it was subject to modification.

5

As a result, we must consider the manner of payment set out in Mr. Martinez's restitution order.

**IV.  The restitution order required Mr. Martinez only to comply with the payment schedule; the order did not create an immediately enforceable debt of the full restitution amount.**

The restitution order required Mr. Martinez to do two things. First, he had to pay a total amount of about $2.7 million. Second, he had to pay monthly installments. In light of these requirements, we must determine whether Mr. Martinez

- owed the full amount immediately or

- owed only the installment payments until the entire amount was fully paid.

To determine whether the full amount was due immediately, we must examine the restitution order and the statutory scheme governing the district court's issuance of that order. The order and the statutory scheme lead us to conclude that Mr. Martinez was to remain current with his installment payments, but had no obligation to immediately pay the full amount.

**A.  The district court's restitution order required Mr. Martinez only to pay monthly installments of 25% of his net disposable income.**

In two ways, the district court ordered Mr. Martinez only to make installment payments rather than to immediately pay the total restitution amount. First, the installment schedule called for monthly payments based

6

on a percentage of Mr. Martinez's disposable income. Second, the district court specifically declined to order immediate payment of the entire amount. In light of these actions, we conclude that the district court required only compliance with the payment schedule and did not make the full restitution amount due immediately.

### 1. The district court's oral pronouncement controls.

The court ordered different things in its oral and written pronouncements. Orally, the court ordered a fixed monthly amount: 25% of Mr. Martinez's net disposable income. R. vol. 2, at 292. In the written judgment, however, the court changed the reference from a fixed amount to a minimum payment: "*no less than* 25% of the net household income." R. vol. 1, at 369 (emphasis added).

When the oral and written orders conflict, as they do here, we look to the oral pronouncement. *See United States v. Marquez*, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003) (holding that "an oral pronouncement of sentence from the bench controls over . . . written language"). Under the oral pronouncement, Mr. Martinez had to make payments of "25 percent of [his] monthly net disposable income." R. vol. 2, at 292. Nothing in the oral pronouncement suggests that the district court intended to make the full restitution amount due immediately.[3]

---

[3] In denying the motion to quash, the district court incorrectly relied on the restitution order as memorialized in the written judgment (as

7

### 2. The district court expressly declined to make the full restitution amount due immediately.

The district court clarified its intent not only in the oral pronouncement, but also in the section of the written judgment titled "Schedule of Payments."[4] In this section, the written judgment contains two boxes, either of which the court can check to indicate when a restitution award will become due. R. vol. 1, at 369. The first box states: "In full immediately;" and the second box states: "$300 immediately, balance due (see special instructions regarding payment of criminal monetary penalties)." *Id.* The district court left the first box blank and checked only the second box. *Id.* The written "Schedule of Payments" section looks like this (without the highlighting):

**SCHEDULE OF PAYMENTS**

Payments shall be applied in the following order (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

A  ☐  In full immediately; or

B  ☒  $ 300 immediately, balance due (see special instructions regarding payment of criminal monetary penalties).

---

minimum payments), rather than as recited in the oral pronouncement (as a fixed percentage of Mr. Martinez's disposable income). R. vol. 1, at 528-29.

[4]  Although our precedents preclude us from considering the written "no less than" phrase as part of the restitution order, we can consider the written judgment to the extent that the judgment does not conflict with the oral pronouncement. *See United States v. Young*, 45 F.3d 1405, 1417 (10th Cir. 1995) ("[T]he oral pronouncement of sentence controls over any ambiguity created by the slightly different language of the written judgment."). The "Schedule of Payments" section does not conflict with anything in the oral pronouncement.

By checking the second box, the district court required Mr. Martinez to pay only $300 immediately and indicated that the "balance" of the total restitution award would become "due" subject to the "special instructions" (referring to the payment schedule). *See id.* (providing a payment schedule below the two boxes under "Schedule of Payments"). By leaving the first box blank, the district court declined to order immediate payment of the full restitution amount. *See United States v. Carter*, 742 F.3d 440, 444 (9th Cir. 2014) (per curiam) (concluding that the judgment did not require restitution as part of supervised release conditions, in part because the district court had not checked the box requiring restitution).

\* \* \* \*

Based on the district court's oral pronouncement and the "Schedule of Payments" section of the written judgment, we interpret the restitution order to require Mr. Martinez only to make monthly installment payments of 25% of his net disposable income. As long as Mr. Martinez complies with this order, the full restitution amount would not become immediately due.

**B.    Under the statutory framework governing restitution orders, the installment-based restitution order does not create an immediately enforceable debt for the full restitution amount.**

Even if the district court did not make the full restitution award due immediately, the government argues that Mr. Martinez would owe the full

9

amount based on the statutory scheme governing restitution orders. Therefore, the government insists that it can immediately enforce the total restitution amount, just as the government could with a civil judgment of the same amount.

But unlike a civil judgment, the restitution order is the product of a "specific and detailed [statutory] scheme addressing the issuance . . . of restitution orders arising out of criminal prosecutions." *United States v. Wyss*, 744 F.3d 1214, 1217 (10th Cir. 2014); *see* 18 U.S.C. § 3664 (2012) (establishing the procedure governing issuance of restitution orders); *id.* § 3572 (further establishing the procedure governing issuance of restitution orders). As a result, we must construe the restitution order in light of the statutory scheme.

We are guided by three parts of this statutory scheme:

1. provisions affording the district court the discretion to order installment payments and the consequences of a defendant's default on these payments (18 U.S.C. § 3572(d) and (i)),

2. provisions requiring the district court to direct the manner of payment after considering the defendant's financial condition (18 U.S.C. §§ 3664(f)(2) and 3572(a)(1)-(2)), and

3. provisions granting discretion to the district court to order in-kind payments (for example, payments from the funds in retirement accounts) (18 U.S.C. § 3664(f)(4)).

Based on these three parts of the statutory framework, we conclude that the government cannot enforce the restitution order beyond the monthly payment schedule.

10

**1. Under 18 U.S.C. § 3572, the full restitution amount is due immediately only if the restitution order does not provide for installment payments.**

When ordering restitution, the court must follow the procedure set out in 18 U.S.C. §§ 3664 and 3572. Under our reading of §§ 3572(d) and (i), an installment-based restitution order does not render the total restitution amount due immediately.

Subsection (d) of § 3572 provides that "[a] person sentenced to pay . . . restitution . . . shall make such payment immediately, *unless*, in the interest of justice, the court provides for payment . . . in installments." *Id.* § 3572(d)(1) (emphasis added). This subsection implies that full payment is due immediately *only if* the district court does not provide for installment payments. Thus, a defendant ordered to pay restitution in installments need not immediately pay the full amount. Instead, a defendant subject to an installment-based restitution order need only make payments at the intervals and in the amounts specified by the order.

Subsection (i) of § 3572 explains what happens when a defendant defaults on a restitution order. Under § 3572(i), a defendant who defaults on a payment schedule must pay the full restitution award within 30 days, "notwithstanding any installment schedule." *Id.* § 3572(i). This provision would be unnecessary, even meaningless, if the total restitution amount were already owed in full under an installment-based restitution order. *See*

11

*United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (stating that a court must interpret a statute in a way that gives effect to each term).

In our view, §§ 3572(d) and (i) suggest that an installment-based restitution order does not render the total restitution amount due immediately.

**2.      The government's position would displace the discretion that the statutory scheme extends to the district court to tailor the restitution payment schedule to a defendant's financial condition.**

Beyond these express statutory provisions, the government's theory conflicts with the statutory scheme's directive for the district court to impose a payment schedule that reflects a defendant's financial condition.

Under 18 U.S.C. §§ 3664 and 3572, the district court must consider the defendant's financial condition before deciding how restitution is to be paid. *See* 18 U.S.C. § 3664(f)(2) (2012) (requiring the district court to specify the manner and the schedule of restitution payments "in consideration of" the defendant's financial condition). For example, the court must consider the defendant's financial resources, projected earnings, and financial obligations. *Id.* § 3664(f)(2)(A)-(C). Until these financial considerations are considered, the court cannot specify "the manner in which, and the schedule according to which, the restitution is to be paid." *Id.* § 3664(f)(2). Indeed, we have held that a court commits plain error when failing to properly consider a defendant's financial condition

12

before issuing a restitution order. *United States v. Ahidley*, 486 F.3d 1184, 1191-92 (10th Cir. 2007).

In requiring the court to consider the defendant's financial condition, the statute directs the court (not the government) to determine how and when the defendant should pay the restitution amount. *See United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013) (stating that 18 U.S.C. § 3664 "carefully balance[s] the need for obtaining victim compensation with a requirement that restitution obligations be based on the defendant's ability to pay"). Nonetheless, the government argues that it can use garnishment to immediately enforce the full restitution amount even if the district court decided to order installment payments (rather than immediate payment) after considering the defendant's financial condition. This interpretation would allow the government to usurp the district court's role in evaluating the defendant's financial conditions and setting the payment schedule. *See United States v. Prouty*, 303 F.3d 1249, 1254-55 (11th Cir. 2002) (holding that 18 U.S.C. § 3664 expressly requires district courts to set the schedule for restitution payments and cannot delegate this authority).

In our view, the payment schedule reflected the district court's determination of how and when Mr. Martinez should pay the restitution after evaluating his financial condition. The government circumvented that evaluation by garnishing Mr. Martinez's retirement accounts in disregard of the district court's payment schedule.

13

**3. The government's position conflicts with the district court's exclusive statutory authority to require in-kind payments.**

Finally, the garnishments would allow the government to recoup an in-kind payment on top of the installment payments required in the restitution order. The government suggests that it can collect this in-kind payment even though Mr. Martinez was in compliance with his payment schedule, but this suggestion conflicts with 18 U.S.C. § 3664. Section 3664 states that in-kind payments can be ordered by the district court, not the government. *See* 18 U.S.C. § 3664(f)(3)(A) (2012) ("A restitution order [issued by the district court] may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments."). The authority to order in-kind payments remains exclusively with the district court even when the district court chooses to establish an installment payment schedule.

Though the district court declined to require in-kind payments, the government effectively required them (without statutory authority) by garnishing the retirement accounts while Mr. Martinez was in compliance with his payment schedule.

* * * *

In these three ways, the statutory scheme directs the district court, not the government, to direct how and when the defendant is to satisfy a

14

restitution order. The district court complied with this directive, setting a payment schedule rather than requiring immediate payment. The government could not usurp the district court's role by enforcing payments not yet due under the court-ordered payment schedule.

**V.    Garnishment of Mr. Martinez's retirement accounts would exceed the terms of the restitution order; therefore, the government lacks authority to garnish these accounts.**

The government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms. Thus, the government's enforcement is limited by the restitution order, which requires Mr. Martinez only to make monthly payments of 25% of his net disposable income. The order does not impose any immediately enforceable obligation to pay the full restitution amount.

The garnishments would exceed what the restitution order requires of Mr. Martinez. He has had relatively little monthly income; as a result, he has owed relatively little in monthly payments. But Mr. Martinez's retirement accounts are worth approximately $470,000. Thus, the garnishments would force Mr. Martinez to pay far more than what he owes under the installment schedule. This requirement conflicts with the terms of the restitution order and the statutory scheme.

**VI.  The district court erred by relying on *United States v. Ekong*.**

In denying the motion to quash, the district court relied on *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007) (per curiam). There the Fifth Circuit Court of Appeals allowed a garnishment to proceed even though the district court had ordered a payment schedule. *Ekong*, 518 F.3d at 286. This determination led to the denial of Mr. Martinez's motion to quash, with the district court calling *Ekong* "extremely persuasive." R. vol. 1, at 529. But in *Ekong*, the Fifth Circuit addressed very different language in the district court's restitution order.

In *Ekong*, the defendant opposed garnishment on the ground that she had a payment schedule. Appellant's Opening Br. at 8-9, *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007) (No. 06-11185), 2007 WL 5110986. But the payment schedule was triggered only if the defendant had not paid the full restitution amount by the time she began supervised release:

> If upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after the release from custody at the rate of $500 per month until the restitution is paid in full.

Judgment in a Criminal Case at 6, *United States v. Ekong*, No. 3:04-CR-030-M (N.D. Tex. Sept. 10, 2004), ECF No. 74. The government relied on this language in defending its garnishment, arguing that the restitution order effectively required immediate payment by requiring installments only if the defendant had not fully paid the restitution

16

when she began supervised release. Appellee's Resp. Br. at 20, *United States v. Ekong*, 518 F.3d 285 (5th Cir. 2007) (No. 06-11185), 2007 WL 5110987 ("The United States asserts that the language 'any part of restitution remains unpaid' authorizes the present garnishment action."); United States' Response to Defendant's Opposition to Plaintiff's Application for Writ of Garnishment at 4-5, *United States v. Ekong*, No. 3:05-CV-810-K (N.D. Tex. Sept. 30, 2005), ECF No. 14 ("The United States advances this language 'any part of restitution remains unpaid' denotes [the defendant's] requirement for immediate payment of the restitution ordered herein.").

The Fifth Circuit Court of Appeals ultimately held that the installment payments did not prevent the garnishment. *Ekong*, 518 F.3d at 286. In doing so, the court concluded that there was nothing in the restitution order to prevent the government from aggressively enforcing the restitution order. *Id.*

It is impossible to tell from the *Ekong* opinion whether the Fifth Circuit reached this conclusion because it (1) agreed with the government that the judgment required immediate payment of the full restitution amount, requiring installments only if the defendant failed to pay the full amount by the time she began supervised release or (2) concluded that the government could garnish the full restitution

17

amount in all cases, regardless of the language in the restitution order. *See id.*

If the Fifth Circuit was relying on the government's argument that the installment schedule was conditional, the argument would not apply to the oral pronouncement of Mr. Martinez's restitution order. And if the Fifth Circuit was relying on the statutory scheme, the court failed to explain how that scheme would permit garnishment of payments not yet due. Thus, we do not believe *Ekong* helps us decide whether the government was entitled to garnish Mr. Martinez's retirement accounts in the absence of a default on his payment schedule.

## VII. Conclusion

We agree with Mr. and Ms. Martinez, concluding that the garnishments would entail enforcement of a debt not yet due. As a result, the district court should have granted the motion to quash the garnishments. Accordingly, we reverse and remand with instructions for the district court to quash the garnishments of the two retirement accounts.